IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO


TILLIE C. SANDOVAL,

        Plaintiff,

vs.                                              No. CIV-05-108 JC/ACT

LAS CLINICAS DEL NORTE, INC.,
a New Mexico corporation,

        Defendants.


**MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court upon Defendant's Motion for Summary Judgment, filed December 16, 2005 (*Doc.* 29). Defendant moves for judgment in this case on the grounds that (1) Plaintiff was not suffering from a disability as that term is defined by the Americans with Disabilities Act, so therefore, her claim must fail; (2) Plaintiff was not denied any reasonable accommodations; and (3) Plaintiff's COBRA claim fails because she was an Introductory/Orientation employee at the time she was terminated, and thus not eligible for health insurance benefits of any kind. The Court, having reviewed the Motion, memoranda and exhibits submitted by the parties, finds the Motion to be well-taken, and it is **granted**.

**I.    Background**

Plaintiff, Tillie Sandoval, was hired as the Director of Nursing at Las Clinicas on October 20, 2003. She was hired as an Introductory/Orientation employee for her first 90 days of employment. The Las Clinicas employment manual states that these types of employees can be terminated for any lawful reason, with or without cause. At the time she was hired, Ms. Sandoval

was being treated for back pain and sciatica. She indicated in a questionnaire given to her at the beginning of her employment that she did have prior back problems. Because of this pre-existing condition, Ms. Sandoval was to have turned in a second form, completed by her own physician, regarding it. This form was never returned to her employer.

On November 3, 2003, Ms. Sandoval fell at work and aggravated her preexisting back injury, while also claiming injury to her shoulders and ankle. Ms. Sandoval saw a Dr. Rojas the day she was injured, and then took two days off work. When Ms. Sandoval returned to work, she resumed her regular duties. Subsequently, Ms. Sandoval requested days off for doctor's appointments and for physical therapy, which were all granted, although it was requested that Ms. Sandoval reschedule any appointments set for two specific days in December (10 & 17) so that her supervisor, Joan McClelland, could meet with her. Ms. Sandoval missed several days of work in December for other reasons, including the flu (December 8, 9, & 10) and her father-in-law's death (December 17 &18). Ms. Sandoval claims that she also missed these latter dates because of a flare-up in her back.

Ms. McClelland, Ms. Sandoval's immediate supervisor, and Andy Lopez, the Director of Las Clinicas, claim that they were not made aware that Ms. Sandoval was rendered disabled after her fall or that she needed any accommodations. Ms. McClelland and Mr. Lopez did have documented concerns, however, about Ms. Sandoval's job performance, regardless of the events surrounding her fall. Ms. McClelland sent an email to Mr. Lopez on November 9, 2003, expressing her concerns about Ms. Sandoval's work and attitude. Ms. McClelland also claims that as early as December 6, she felt Ms. Sandoval should have been terminated

On December 18, Ms. Sandoval saw a Dr. Santos, who recommended that she take two

weeks off work to rest her back. Ms. Sandoval submitted a request for this time off on December 19. On December 22, a letter was sent to Ms. Sandoval, giving her notice of her termination to be effective on January 2, 2004.

Ms. Sandoval now claims that she was discriminated against in violation of the ADA because of her termination and the lack of reasonable accommodations provided to her by not granting leave for a two-week absence and by not allowing her to fully recover from her fall at work.[1]

## II.     Standard of Review

Under FED. R. CIV. P. 56, summary judgment is proper in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Handy v. Price*, 996 F.2d 1064, 1066 (10th Cir. 1993). The moving party bears the initial burden of establishing that no genuine issue exists as to any material fact. *Nat'l Union Fire Ins. Co. v. Emhart Corp.*, 11 F.3d 1524, 1528 (10th Cir. 1993). Once the initial burden has been met, the burden then shifts to the non-moving party to show that a genuine issue of material fact remains for the fact finder to resolve. *Thrifty Rent-A-Car Sys., Inc. v. Brown Flight Rental One Corp.*, 24 F.3d 1190, 1194 (10th Cir. 1994). The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Biester v. Midwest Health Servs., Inc.*, 77 F.3d 1264, 1266 (10th Cir. 1996) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio*

---

[1] While the Tenth Circuit has not definitively held that wrongful termination and failure to reasonably accommodate are two separate and distinct causes of action available under the ADA, they have recognized and proceeded upon this assumption. *See Bartee v. Michelin North America., Inc.*, 374 F.3d 906, 912 n.5 (10th Cir. 2004) (noting that the 5th Circuit treats the claims as distinct). Therefore, this Court will proceed under the same assumption.

*Corp.*, 475 U.S. 574, 585-586 (1986)).

### III. Discussion

    A.    COBRA Claim

Plaintiff withdraws this claim, as she acknowledges that she was not part of the health insurance plan of the Defendant. Resp. at 8.

    B.    ADA Claim

        1.    Discrimination Based on Disability Resulting in Termination

In *Siemon v. AT&T Corp.*, the Tenth Circuit held that to establish a prima facie case of discrimination under the ADA, a plaintiff must demonstrate "(1) that he is 'disabled' within the meaning of the ADA; (2) that he is qualified [to do the job]-with or without reasonable accommodation; and (3) that he was discriminated against because of his disability." 117 F.3d 1173, 1175 (10th Cir. 1997). If an ADA plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action. *See Hardy v. S.F. Phosphates Ltd.*, 185 F.3d 1076, 1079 (10th Cir.1999). If the employer is able to do this, the burden returns to the plaintiff to present evidence that the proffered reason is not worthy of belief. *Id*. at 1079-80. Therefore, the Court will first examine whether Plaintiff has met all of these prongs, and can thereby show that she was actually discriminated against because of her disability. Then, if necessary, the Court will engage in the burden-shifting analysis.

        a.    Disability

To establish a prima facie case of discrimination under the ADA, Plaintiff must first establish that he is "disabled" within the meaning of the statute. *See Rascon v. U S West*

*Communications, Inc.*, 143 F.3d 1324, 1332 (10th Cir. 1998) (citation omitted). The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual; (B) a record of such impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §12102(2). To qualify as disabled under subsection (A) of the ADA's definition, a claimant must initially prove that she has a physical or mental impairment. 42 U.S.C. §12102(2)(A). Further, the claimant must also prove that this impairment limits a major life activity. *Toyota Motor Manuf., Ky., Inc. v. Williams*, 534 U.S. 184, 194-5 (2002). These major life activities include: "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. §1613.702(c). Both parties acknowledge that these aforementioned Equal Employment Opportunity Commission ("EEOC") regulations establish a list of activities which could be regarded as "major life activities." Plaintiff also points to an appendix to these regulations which include the activities of "sitting, standing, lifting, and reaching." 29 C.F.R. §1630.2(J)(1). The Tenth Circuit has also concurred that a major life activity includes lifting. *See Lowe v. Angelo's Italian Foods, Inc.*, 87 F.3d 1170, 1174 (10th Cir. 1996).

In addition to showing that one of these impairments exists, a claimant must also show that the limitation on these major life activities is "substantial." 42 U.S.C. §12102(2)(A). A court must consider three factors in determining whether an impairment substantially limits a major life activity: (1) the nature and severity of the impairment, (2) the duration or expected duration of the impairment, and (3) the permanent or long term impact resulting from the impairment. 29 C.F.R. § 1630.2(j)(2); *Lowe*, 87 F.3d at 1173.

Ms. Sandoval is claiming to be completely disabled, and is receiving worker's compensation disability benefits. Defendant claims, however, that there is no record that Ms. Sandoval had a substantially limiting impairment of one or more major life activities. Plaintiff does concede that there must be a showing that an impairment limits a major life activity, but also argues that Ms. Sandoval was substantially limited in several of her life activities including lifting and working.

Ms. Sandoval does not dispute that when she returned to work after her fall, she worked normal days as a floor nurse, which included using the abilities of bending, stooping, walking and sitting. Def.'s Material Fact. No. 9. Further, Ms. Sandoval acknowledges that she did not complain about this work, but instead "worked through the pain." Pl.'s Dep. at 73:6-11. Plaintiff claims, though, that throughout this time, her condition substantially worsened. *Id*. at 101:7-23. As evidence of this, Ms. Sandoval cites to the doctor recommendation of December 18, 2003 that she take two weeks leave and then be limited to light duty when returning to work. Plaintiff also cites to the recommendation that she received from Dr. Santos on November 3, 2003 "not to lift, push or pull greater than five pounds with her right upper extremity as part of her working." Def.'s Ex. 29. Plaintiff suggests that this restriction needs to be compared to the case of *Lusk v. Ryder Integrated Logics*, 238 F.3d 1237 (10th Cir. 2001). In *Lusk,* a permanent forty pound lifting restriction was held to not be enough of a substantial impairment on its face as to preclude summary judgment, although the Court did note that comparative evidence of the outside population could be used to show that the impairment was substantial. *Id*. at 1240-41. In the earlier *Lowe* decision, however, which *Lusk* cites to, but did not overturn, a fifteen pound

6


restriction on lifting was determined to be enough of a substantial impairment on its face to create a genuine issue of material fact, and to withstand summary judgment. *Lowe*, 87 F.3d. at 1174.  In the present case, then, a five pound lifting restriction for an indeterminate amount of time does seem to fit as a substantial impairment sufficient enough to preclude summary judgment as to whether Plaintiff was disabled.

The Court finds this argument persuasive, and recognizes that Plaintiff could be considered to satisfy prong (A) of the ADA definition of disability as of the time that restrictions were put upon her ability to lift and perform other activities with her right arm.  However, Plaintiff still must satisfy one of the two other prongs of this definition of disability, that she had a record of this disability or was regarded as having a disability.  Defendant alleges that Ms. Sandoval cannot meet prong (B) or (C) of the meaning of a disability because Ms. Sandoval cannot produce a record of her impairment, or that she was regarded as having any such impairment.

Defendant maintains that although Ms. Sandoval has medical records indicating that her back was treated for injury during the time that she was employed, she still has not proved that she had a record of substantial impairment because of this injury.  Defendant points to the evidence that Ms. Sandoval was actually cleared for light duty work as of January 15, 2004, as evidence that there was no record of a substantial impairment.  That two weeks leave was actually required before this light duty work clearance, however, does point to at least an impairment, as Plaintiff could not do her job at all during this time.  Further, there is also a record of Plaintiff's lifting impairment as early as November 3, 2003, which Plaintiff claims to be one of the main

bases of her disability.  This is sufficient to present a genuine material issue of fact as to whether Plaintiff did maintain a record of her disability.

Defendant also maintains that there is no record that Plaintiff's fellow Las Clinicas employees regarded her as disabled or impaired. Because the Court has found that a genuine issue of material fact exists as to the existence of a record of Ms. Sandoval's substantial impairment, however, it is not necessary to examine whether Plaintiff would meet prong C as well.  Plaintiff still must clear the hurdle, however, of meeting the two other requirements needed to show discrimination because of her disability.

b. Qualified to do the job

Defendant presents some evidence that Ms. Sandoval was not qualified to do her job, with or without any accommodations being made for her.  The deposition testimony of Ms. McClelland indicates that she felt Ms. Sandoval was "not a good match for the position." Def.'s Exs. 22, 23, 24.  Additionally, Defendant presents Ms. McClelland's notes which indicate that Ms. Sandoval was "combative" and "insubordinate." Def. Ex. 24.  This evidence was presented under Def.'s Material Facts 18, 19 and 20.   Ms. Sandoval does not refute this evidence, but instead admits these facts, only affirmatively noting that the reservations about her job performance occurred after her back injury.

It is apparent, however, that Defendant believed that Ms. Sandoval was qualified to do the job when she was hired.  Besides the myriad evidence presented about how Ms. Sandoval was not fired because of her disability, Defendant presents little to suggest that Ms. Sandoval did not meet the minimum qualifications necessary to do her job.  Instead, Defendant appears to suggest that

Plaintiff was fired for reasons more related to aspects of Plaintiff's personality and/or work ethics and performance which may have interfered with her ability to do her job. In any event, it remains that material facts are still in question as to whether or not Plaintiff was qualified to do her job with or without reasonable accommodations.

### c.  Discrimination based on disability

In order to prevail on summary judgment as to this argument, then, Defendant must be able to show that no material issue of fact remains as to whether Plaintiff was discriminated against because of her disability. The Court believes that this has been accomplished in this case.

Ms. Sandoval submitted her request for two weeks worth of leave on December 19, a Friday. She received notice that she was to be terminated on December 22, a Monday. It appears that the essence of her argument of discrimination is that because she submitted her request for leave before she received her notice of termination, she was the victim of discrimination. Yet, as Defendant points out, Plaintiff does not dispute Defendant's submission of material facts 18, 19 & 20, which establish that Ms. Sandoval was terminated for reasons other than her alleged disability, and that this decision was made as early as December 6. In fact, Plaintiff does not rebut that her immediate supervisor, Ms. McClelland, expressed concerns about her as early as November 9, in an email to the director of the clinic. Def. Undisputed Material Fact 18.

In this email, Ms. McClelland refers to Ms. Sandoval as a "mixed bag" and expresses concern about Ms. Sandoval's tendency to sit in the office instead of joining her staff. Ms. McClelland also wrote about her concern that Ms. Sandoval's job need to be clarified more for her. Further, in Ms. McClelland's deposition testimony, she provides more background as to the

9

decision to terminate Ms. Sandoval as early as December 6.  According to her testimony, Ms. McClelland made a note about a conversation with Mr. Lopez, the director of the clinic, about her decision to terminate Ms. Sandoval because of "a three-week history of escalating insubordination and negativity." McClelland Dep. 36:2-11.  Additionally, Ms. McClelland noted in this conversation that Ms. Sandoval was "disrespectful and not a team player," and "had not cooperated with special arrangements to address her orientation." *Id*. at 36:12-15.

      While Plaintiff admits all these material facts, she notes that the reservations about her work performance and the decision to terminate her were made after she had suffered her injury on November 3, 2003.  That her supervisors expressed concerns about her work performance after her injury, however, has no bearing on whether or not she was discriminated against because of her disability because Plaintiff has in no way shown that her supervisors had any knowledge that she was disabled at any time during her employment.  It was Plaintiff's own deposition testimony that established that she worked through the pain, instead of notifying her supervisors of a potential disability or requesting an accommodation for it.  Pl. Dep. 73:18-21.  Further, Plaintiff admits in her deposition testimony that she did not specifically request any help in dealing with her injuries.  *Id*. at 98:7-21.  Additionally, Ms. McClelland and Mr. Lopez testified in their depositions that as far as they were aware, Ms. Sandoval had never indicated to anyone at Las Clinicas that she was disabled or needed any accommodations.  McClelland Dep. 62:10-24; Lopez Dep. 24:7-14.  Therefore, although her supervisors were definitely aware that Plaintiff had been injured, automatic knowledge of Plaintiff's disability, and her needs arising from that, cannot be ascribed to them.

Plaintiff has not shown that a genuine material issue of fact remains as to whether she was discriminated against because of her disability. Therefore, summary judgment is granted as to Plaintiff's ADA termination claim.

2. Reasonable Accommodation

Plaintiff's second claim under the ADA was that she was denied a reasonable accommodation for her disability because: (1) she was asked to reschedule physical therapy appointments, and (2) because she presented a Doctor's excuse and was fired two days later. The ADA prohibits an employer from failing to make a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. 42 U.S.C. §§12112(b)(5)(a). To present a prima facie failure to accommodate claim, the first two elements of a wrongful termination claim remain the same, while the third is met by showing that "an employer [did not] take reasonable steps to reassign a qualified individual to a vacant position or a position the employer reasonably anticipates will become vacant in the fairly immediate future." *Albert v. Smith's Food & Drug Centers, Inc.*, 356 F.3d 1242, 1252 (10th Cir. 2004).

The issue of when employer liability is triggered in reasonable accommodation claims remains somewhat unclear. The Tenth Circuit has held, though, that a reasonable accommodation process, "must ordinarily begin with the employee providing notice to the employer of the employee's disability and any resulting limitations, and expressing a desire for reassignment if no reasonable accommodation is possible in the employee's existing job." *Smith v. Midland Brake, Inc., a Div. of Echlin, Inc.*, 180 F.3d 1154, 1172 (10th Cir. 1999) (citing *Taylor v. Principal*

*Financial Group, Inc.*, 93 F.3d 155, 165 (5th Cir.1996)).[2]

Here, Plaintiff has not demonstrated that she either informed Defendant of her disability, or that she actually requested a reasonable accommodation for that disability in either of her two claims for failure to reasonably accommodate.  Therefore, while the Court is unsure whether any of Plaintiff's charges of failure to reasonably accommodate her could be sustained, even when assuming that these claims could go forward, they must also fail on their individual merits as well.

In regard to Plaintiff's physical therapy appointments, time was apparently freely given to her to make these appointments, and in no way was it unreasonable to ask her to alter a scheduled date.  Indeed, so long as the accommodation offered by the employer is reasonable, the ADA does not require an employer to provide the precise accommodation that the employee requests. *Sharpe v. American Telephone & Telegraph Co.*, 66 F.3d 1045, 1050 (9th Cir. 1995).  Although the appointments might not have then fallen on the precise dates that Ms. Sandoval wanted, as long as time was going to be granted to her to attend her appointments, Defendant cannot be held to have acted unreasonably.  In any event, it appears that Ms. Sandoval took both of those scheduled dates off anyway for different reasons (the flu and her father-in-law's funeral), so it hardly seems that her requests were not met.

As to the termination, while this failure to reasonably accommodate still falls prey to the argument that Plaintiff must have first informed Defendant about her disability, further, Plaintiff has in no way causally linked her termination to her request for leave, except by its temporal

---

[2]In a footnote, the Circuit notes that the Seventh and Eighth Circuits are in agreement as to when employer liability is triggered; noting, indeed, that employers are not required to be "clairvoyant." *Smith*, 180 F.3d at 1172, n.9 (citing *Hedberg v. Indiana Bell Telephone Co.*, 47 F.3d 928, 934 (7th Cir.1995); *Miller v. National Cas. Co.*, 61 F.3d 627, 630 (8th Cir.1995)).

proximity. Plaintiff has, indeed, already admitted that her supervisors were unhappy with her performance much earlier than her request for leave. Further, it has not been shown that Defendant would terminate Plaintiff in order to deny her an accommodation, as until that time Plaintiff appeared to have been granted as much leave as she needed to deal with her medical problems.

Therefore, summary judgment is granted as to the ADA reasonable accommodation claims as well.

Wherefore,

**IT IS ORDERED** that Defendant's Motion for Summary Judgment, filed December 16, 2005 (*Doc*. 29) is **GRANTED**.

**DATED** May 22, 2006.

_____
**SENIOR UNITED STATES DISTRICT JUDGE**

Counsel for Plaintiff:

    Jeffrey A. Dahl, Esq.
    Lamb, Metzgar, Lines & Dahl, P.A.
    Albuquerque, New Mexico

Counsel for Defendants:

    Gerald A. Coppler, Esq.
    Coppler & Mannick, P.C.
    Santa Fe, New Mexico